ROBBINS GELLER RUDMAN
 & DOWD LLP
DAVID T. WISSBROECKER (243867)
EDWARD M. GERGOSIAN (105679)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dwissbroecker@rgrdlaw.com
egergosian@rgrdlaw.com

Attorneys for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| ROBERT WYTAS and DEAN CROMBIE, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>  vs.<br><br>SCOTT A. McGREGOR, HENRY SAMUELI, ERIC K. BRANDT, ROBERT E. SWITZ, JOHN E. MAJOR, ROBERT J. FINOCCHIO, NANCY H. HANDEL, EDDY W. HARTENSTEIN, MARIA M. KLAWE, WILLIAM T. MORROW, HENRY T. NICHOLAS III, AVAGO TECHNOLOGIES LIMITED, PAVONIA LIMITED, SAFARI CAYMAN L.P., AVAGO TECHNOLOGIES CAYMAN HOLDINGS LTD., AVAGO TECHNOLOGIES CAYMAN FINANCE LIMITED, BUFFALO CS MERGER SUB, INC. and BUFFALO UT MERGER SUB, INC.,<br><br>    Defendants. | Case No. 8:15-cv-00979<br><br>CLASS ACTION<br><br>COMPLAINT FOR BREACH OF FIDUCIARY DUTY |

Plaintiffs Robert Wytas and Dean Crombie ("plaintiffs"), by their undersigned attorneys, for this class action complaint, allege upon information and belief, except as to the allegations specifically pertaining to plaintiffs, which are based on personal knowledge, as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction pursuant to 28 U.S.C. §1332(a)(3) because plaintiffs and defendants are citizens of different states and/or a foreign state and the amount in controversy exceeds $75,000, exclusive of interest and costs, and because each of the defendants has had extensive contacts with California as either a director and/or officer of Broadcom Corporation ("Broadcom" or the "Company") or otherwise, which makes the exercise of personal jurisdiction over them proper.  This action is not a collusive one designed to confer jurisdiction upon a court of the United States that it would not otherwise have

2.      Venue is proper in this District because Broadcom has a substantial presence in California and is headquartered in Irvine, California, a majority of the individuals named as defendants reside in this District, and a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**NATURE OF THE ACTION**

3.      Plaintiffs bring this class action individually and on behalf of the other public stockholders of Broadcom, other than defendants and their affiliates, against Broadcom's Board of Directors (the "Board") and certain current and former officers and/or directors of Broadcom (collectively with the members of the Board, the "Individual Defendants"), Avago Technologies Limited, a limited company incorporated under the laws of the Republic of Singapore ("Avago"), Pavonia Limited, a limited company incorporated under the laws of the Republic of Singapore ("Holdco"), Safari Cayman L.P., an exempted limited partnership organized under the laws of the Cayman Islands and a direct wholly-owned subsidiary of Holdco ("New LP"), Avago Technologies Cayman Holdings Ltd., an exempted company organized

under the laws of the Cayman Islands and a direct wholly-owned subsidiary of New LP ("Intermediate Holdco"), Avago Technologies Cayman Finance Limited, an exempted company organized under the laws of the Cayman Islands and a direct wholly-owned subsidiary of Intermediate Holdco ("Finance Holdco"), Buffalo CS Merger Sub, Inc., a California corporation and wholly-owned subsidiary of Finance Holdco ("Cash/Stock Merger Sub"), and Buffalo UT Merger Sub, Inc., a California corporation and wholly-owned subsidiary of Finance Holdco ("Unit Merger Sub," and together with Cash/Stock Merger Sub, the "Merger Subs") (the Merger Subs, Avago, Holdco, New LP, Intermediate Holdco and Finance Holdco are collectively referred to herein as the "Avago Parties"), for breach of and aiding and abetting the breach of fiduciary duties owed to the class in connection with Avago's proposed acquisition of Broadcom.  This action seeks to enjoin the proposed acquisition announced on May 28, 2015, pursuant to which Avago will acquire Broadcom in a cash and stock transaction that values the ***combined*** company at $77 billion in enterprise value (the "Proposed Acquisition") upon consummation of the merger.

4.     If the Proposed Acquisition is allowed to be consummated, Broadcom's stockholders will receive $17 billion in cash and the economic equivalent of approximately 140 million Avago ordinary shares, valued at $20 billion as of May 27, 2015, for an implied value of approximately $54.50 per share (the "Proposed Consideration").  Broadcom stockholders will have the ability to elect to receive the Proposed Consideration as either: (i) $54.50 in cash; (ii) 0.4378 ordinary shares in the newly formed Singapore holding company, HoldCo; (iii) a restricted equity security that is the economic equivalent of 0.4378 ordinary shares of HoldCo that will not be transferable or saleable for a period of one to two years after closing; or (iv) a combination thereof.  The shareholder election will be subject to a proration mechanism, which is anticipated to result in payment in the aggregate in the range of 50% cash and 50% equity in the transaction.  After the close of the Proposed Acquisition, Broadcom stockholders will own approximately 32% of the combined

company.  The Proposed Consideration represents a meager 16% premium to the Company's closing price before rumors of the Proposed Acquisition were announced.

5.      Broadcom provides semiconductor solutions for wired and wireless communications.  It is the ninth biggest semiconductor company by revenue, the fourth biggest company if memory companies are excluded.  Defendants Henry Samueli ("Samueli"), the Company's current Chief Technical Officer and Chairman of the Board, and Henry T. Nicholas III ("Nicholas"), the Company's former Chief Executive Officer ("CEO"), founded the Company in 1991.  Though defendant Nicholas is no longer an officer of the Company, he and defendant Samueli together control nearly 50% of the voting power of Broadcom's stockholders, giving them effective control over the voting power of the stockholders.  They have both signed support agreements, which effectively make the upcoming stockholder vote on the Proposed Acquisition a mere formality.  In addition, the support agreements prevent any superior proposals from arising, as defendants Samueli and Nicholas are obligated to vote their shares in favor of the Proposed Acquisition, regardless of whether it is in the best interests of the Company's stockholders.

6.      In addition, defendant Samueli and one other unnamed Board member will join the Board of the combined company.  Defendant Samueli will also be named the Chief Technical Officer of the combined company.  Defendant Nicholas will take an undefined senior advisory role at the combined company, returning to the company he founded after resigning from the Board after the SEC charged him with falsifying Broadcom's reported income in 2008.

7.      Because Samueli and Nicholas control the Company and stand on both sides of the Proposed Acquisition, they, and the rest of the Individual Defendants, have the burden of proving the entire fairness of the Proposed Acquisition.  They will be unable to meet this burden.  While those who control the Company will receive substantial, and unique, benefits upon the closing of the Proposed Acquisition, Broadcom's ordinary stockholders will be short-changed.  As the table below shows,

the Proposed Consideration's premium is less than half the average and median premium offered for deals over the past three years in the semiconductor industry worth between $3 billion and $50 billion.

| Premium To Stock Price | | | |
|---|---|---|---|
| | 1-Day | 1-Week | 1-Month |
| Average: | 30.55% | 31.15% | 32.83% |
| Median: | 40.96% | 39.51% | 38.61% |
| Proposed Acquisition | 15.8% | 15.5% | 18.2% |

8.    The Proposed Consideration is also inadequate when compared to the Company's long-term health.  On April 21, 2015, the Company announced its results for the first quarter of the 2015 fiscal year.   In the results, the Company announced an increase of net revenue and non-GAAP net income.  After the announcement of these earnings, ten different analysts pegged the Company's target stock price above the proposed consideration.  In fact, soon after, Merrill Lynch conducted a sum of the parts analysis and stated that the Company was worth between $61 and $75 per share, stating that it believed that the risks to the Company were overstated and that Broadcom's new Tomahawk switch could lead the 25 Gig Ethernet cycle in data center.

9.    In order to lock up the Proposed Acquisition on these unfair terms, the defendants adopted numerous preclusive and onerous deal protection devices, which are set forth in the Agreement and Plan of Merger ("Merger Agreement").  These provisions, which collectively preclude any competing offers for the Company, include: (i) a termination fee of $1 billion if the Company accepts a competing bid; (ii) a no-solicitation clause; and (iii) a four-day matching rights period during which the Avago Parties can match any superior proposal received by the Company.

10.    In short, the Proposed Acquisition is designed to unlawfully divest Broadcom's public stockholders of the Company's valuable assets for grossly

1  inadequate consideration.  To remedy defendants' breaches of fiduciary duties and
2  other misconduct, plaintiffs seek injunctive relief preventing consummation of the
3  Proposed Acquisition, unless and until the Company adopts and implements a
4  procedure or process to obtain a transaction that provides the best possible terms for
5  stockholders, or rescission of the Merger Agreement to the extent that the Proposed
6  Acquisition has been consummated.

7  　　　　11.　　In addition, because the Individual Defendants control Broadcom, and
8  will be employees and/or members of the Board of the post-acquisition company,
9  plaintiffs have the ability to attack the validity of the merger pursuant to California
10  Corporations Code §1312(b), in accordance with the procedures set forth in California
11  Corporations Code §1312(c)

12  　　　　　　　　　　　　**THE PARTIES**

13  　　　　12.　　Plaintiff Robert Wytas is and has been a stockholder of Broadcom at all
14  times relevant hereto.  Plaintiff Robert Wytas is a citizen of Florida.

15  　　　　13.　　Plaintiff Dean Crombie is and has been a stockholder of Broadcom at all
16  times relevant hereto.  Plaintiff Dean Crombie is a citizen of New Hampshire.

17  　　　　14.　　Non-defendant Broadcom is a California corporation with principal
18  executive offices located at 5300 California Avenue, Irvine, California.  Broadcom is
19  a global leader and innovator in semiconductor solutions for wired and wireless
20  communications.   The Company has one of the strongest intellectual property
21  portfolios among global fabless semiconductor suppliers, as ranked by the Institute of
22  Electrical and Electronics Engineers. Upon completion of the Proposed Acquisition,
23  Broadcom will become an indirect wholly-owned subsidiary of defendants HoldCo
24  and New LP.

25  　　　　15.　　Defendant Scott A. McGregor ("McGregor") is Broadcom's President,
26  CEO, and a director, and has been since January 2005.  Defendant McGregor is a
27  citizen of California.

28

- 5 -

16.     Defendant Samueli is and has been Broadcom's Chief Technical Officer since December 2009 and is and has been Broadcom's Chairman of the Board since at least May 2012, and is a co-founder of the Company.  Defendant Samueli was also Broadcom's Chairman of the Board from May 2003 to May 2008; Chief Technical Officer from August 1991 to May 2008; and Vice President of Research and Development from August 1991 to March 2003.  In connection with the Proposed Acquisition, defendant Samueli entered into a support agreement with defendant Avago, pursuant to which he agreed to vote his shares in favor of the Proposed Acquisition and against any competing proposals.  Upon completion of the Proposed Acquisition, defendant Samueli will remain Chief Technical Officer and a director of the combined company.  Defendant Samueli is a citizen of California.

17.     Defendant Eric K. Brandt ("Brandt") is and has been Broadcom's Chief Financial Officer since March 2007 and is and has been Executive Vice President since February 2010.  Defendant Brandt is a citizen of California.

18.     Defendant Robert E. Switz ("Switz") is Broadcom's Lead Independent Director and has been since May 2014 and a director and has been since May 2003. Switz is a citizen of Arizona.

19.     Defendant John E. Major ("Major") is a Broadcom director and has been since January 2003.  Defendant Major was also Chairman of the Board from May 2008 to May 2012 and Lead Independent Director from May 2008 to May 2014. Defendant Major is a citizen of California.

20.     Defendant Robert J. Finocchio ("Finocchio") is a Broadcom director and has been since December 2011.  Defendant Finocchio is a citizen of California.

21.     Defendant Nancy H. Handel ("Handel") is a Broadcom director and has been since November 2005.  Defendant Handel is a citizen of California.

22.     Defendant Eddy W. Hartenstein ("Hartenstein") is a Broadcom director and has been since June 2008.  Defendant Hartenstein is a citizen of California.

23.     Defendant Maria M. Klawe ("Klawe") is a Broadcom director and has been since May 2011.  Defendant Klawe is a citizen of California.

24.     Defendant William T. Morrow ("Morrow") is a Broadcom director and has been since June 2008.  Defendant Morrow is a citizen of California.

25.     Defendant Nicholas is a co-founder of Broadcom and was Broadcom's President, CEO, and Co-Chairman of the Board from 1991 to January 2003.  In connection with the Proposed Acquisition, Nicholas entered into a support agreement with defendant Avago, pursuant to which he agreed to vote his shares in favor of the Proposed Acquisition and against any competing proposals.  Upon completion of the Proposed Acquisition, Nicholas will serve in a strategic advisory role with the combined company.  Nicholas and Samueli together control 47% of the voting power of the Company, a de facto controlling block.  Defendant Nicholas is a citizen of California.

26.     Defendant Avago is incorporated under the laws of the Republic of Singapore.  Upon completion of the acquisition, defendant Avago will become an indirect wholly-owned subsidiary of defendants Holdco and New LP.  Defendant Avago is a citizen of Singapore.

27.     Defendant Holdco is incorporated under the laws of the Republic of Singapore.  Upon completion of the Proposed Acquisition, defendant Holdco will be renamed Broadcom Limited and will be the sole general partner of New LP.  Defendant Holdco is a citizen of Singapore.

28.     Defendant New LP is incorporated under the laws of the Cayman Islands and is a direct wholly-owned subsidiary of defendant Holdco.  Defendant New LP will be the sole general partner of Broadcom Limited.  Defendant New LP is a citizen of the Cayman Islands.

29.     Defendant Intermediate Holdco is an exempted company organized under the laws of the Cayman Islands and is a direct wholly-owned subsidiary of New LP.  Defendant Intermediate Holdco is a citizen of the Cayman Islands.

30. Defendant Finance Holdco is an exempted company organized under the laws of the Cayman Islands and is a direct wholly-owned subsidiary of defendant Intermediate Holdco. Pursuant to Merger Agreement, all ordinary shares of Avago will be transferred to Finance Holdco. Defendant Finance Holdco is a citizen of the Cayman Islands.

31. Defendant Cash/Stock Merger Sub is a California corporation and wholly-owned subsidiary of Finance Holdco. Upon completion of the Proposed Acquisition, defendant Cash/Stock Merger Sub will merge with and into Broadcom and cease its separate corporate existence. Defendant Cash/Stock Merger Sub is a citizen of California.

32. Defendant Unit Merger Sub is a California corporation and wholly-owned subsidiary of Finance Holdco. Upon completion of the Proposed Acquisition, defendant Unit Merger Sub will merge with and into Broadcom and cease its separate corporate existence. Defendant Unit Merger Sub is a citizen of California.

## DEFENDANTS' FIDUCIARY DUTIES

33. In any situation where the directors of a publicly traded corporation undertake a transaction that will result in either (i) a change in corporate control or (ii) a break-up of the corporation's assets, the directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's shareholders, and if such transaction will result in a change of corporate control, the shareholders are entitled to receive a significant premium. To diligently comply with these duties, the directors may not take any action that:

(a) adversely affects the value provided to the corporation's shareholders;

(b) discourages or inhibits alternative offers to purchase control of the corporation or its assets;

(c) contractually prohibits them from complying with their fiduciary duties;

(d)   otherwise adversely affects their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

(e)   provides the directors with preferential treatment at the expense of, or separate from, the public shareholders.

34.   In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Broadcom, are obligated to refrain from:

(a)   participating in any transaction where the directors' or officers' loyalties are divided;

(b)   participating in any transaction where the directors or officers will receive a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

(c)   unjustly enriching themselves at the expense or to the detriment of the public shareholders.

35.   Plaintiffs allege herein that defendants, separately and together, in connection with the Proposed Acquisition, are breaching and/or aiding and abetting in the breaches of fiduciary duties owed to plaintiffs and the other public shareholders of Broadcom, including the duties of loyalty, good faith, candor, due care and independence.  As a result of these breaches of fiduciary duties and the aiding and abetting therein, neither plaintiffs nor the Class will receive adequate or fair value for their Broadcom common stock in the Proposed Acquisition.

36.   Because the Individual Defendants as a whole, and defendants Samueli and Nicholas in particular, control the voting power of the Company, and stand on both sides of the Proposed Acquisition, they will have the burden of proving the entire fairness of the transaction, including all aspects of its negotiation, structure, price and terms.

## SUBSTANTIVE ALLEGATIONS

**The Proposed Acquisition**

37.    On May 28, 2015, Broadcom and Avago announced that they had entered into the Merger Agreement, pursuant to which Avago will acquire all the outstanding shares of Broadcom for a total transaction consideration of $37 billion.  The press release stated in relevant part:

**Avago Technologies to Acquire Broadcom for $37 Billion**

- *Creates the world's leading diversified communications semiconductor company*

- *Transaction consideration of $17 billion in cash and equity valued at* approximately *$20 billion as of May 27, 2015*

- *$750 million of projected annual cost synergies expected to be achieved within 18 months*

- *Immediately accretive to non-GAAP EPS and free cash flow*

. . . Avago Technologies Limited and Broadcom Corporation today announced that they have entered into a definitive agreement under which Avago will acquire Broadcom in a cash and stock transaction that values the combined company at $77 billion in enterprise value. Upon completion of the acquisition, the combined company will have the most diversified communications platform in the semiconductor industry, with combined annual revenues of approximately $15 billion.

"Today's announcement marks the combination of the unparalleled engineering prowess of Broadcom with Avago's heritage of technology from HP, AT&T, and LSI Logic, in a landmark transaction for the semiconductor industry," said Hock Tan, President and Chief Executive Officer of Avago. "The combination of Avago and Broadcom creates a global diversified leader in wired and wireless communication semiconductors. Avago has established a strong track record of

successfully integrating companies onto its platform. Together with Broadcom, we intend to bring the combined company to a level of profitability consistent with Avago's long-term target model."

"This transaction benefits all of Broadcom's key stakeholders," remarked Scott McGregor, President and Chief Executive Officer of Broadcom. "Our customers will gain access to a greater breadth of technology and product capability. For our shareholders, the transaction provides both compelling up-front value as well as the opportunity to participate in the future upside of the combined business."

"When Henry Nicholas and I founded Broadcom, we had a vision of creating the world leader in communications semiconductors. Today's announcement is a continuation of that vision and we could not think of a better partner for the future than Avago," stated Dr. Henry Samueli, Co-Founder, Chief Technical Officer and Chairman of the Board of Broadcom.

"The culture that Henry and I created when we founded Broadcom was demanding, execution-oriented, and certainly not guaranteed to mesh with the average technology company," said Dr. Henry T. Nicholas, Co-Founder and past CEO of Broadcom. "It was, however, a culture that enabled Broadcom to grow exponentially and emerge as the market leader in every major market segment involving broadband communications. In Avago, we have found a culture and a management team that embody the best of the philosophies on which Broadcom was founded, together with a fast-paced, no-nonsense, process-driven business culture that we need to take our combined company to the next level. I am confident that, under the visionary leadership of Hock Tan, the combined company will realize its potential to be the world's greatest semiconductor company."

Following completion of the transaction, Mr. Tan, President and Chief Executive Officer of Avago, will continue to serve as President and Chief Executive Officer of the combined company, which will adopt the name Broadcom Limited. Dr. Samueli will join the board of the combined company as will another director from Broadcom. In addition, Dr. Samueli will be appointed Chief Technology Officer of the combined company. Dr. Nicholas will serve in a strategic advisory role within the combined company, reporting to Mr. Tan.

**Transaction Structure and Terms**

Under the terms of the definitive agreement, Avago will acquire Broadcom for $17 billion in cash consideration and the economic equivalent of approximately 140 million Avago ordinary shares, valued at $20 billion as of May 27, 2015, resulting in Broadcom shareholders owning approximately 32% of the combined company. Based on Avago's closing share price as of May 27, 2015, the implied value of the total transaction consideration for Broadcom is $37 billion.

Holders of outstanding shares of Broadcom will have the ability to elect to receive, for each Broadcom share held: (i) $54.50 in cash; (ii) 0.4378 ordinary shares in a newly-formed Singapore holding company ("HoldCo"); (iii) a restricted equity security that is the economic equivalent of 0.4378 ordinary shares of HoldCo that will not be transferable or saleable for a period of one to two years after closing; or (iv) a combination thereof. The shareholder election will be subject to a proration mechanism, which is anticipated to result in payment in the aggregate in the range of 50% cash and 50% equity in the transaction. Upon closing of the transaction, Avago shareholders will exchange their ordinary shares for HoldCo ordinary shares on a one to one basis.

No trading market is expected to develop for the restricted equity. The receipt of the restricted equity is expected to be tax free to former Broadcom shareholders, and if a requested tax ruling is obtained from the IRS, the receipt of HoldCo ordinary shares will also be tax free to the Broadcom shareholders. Receipt of HoldCo ordinary shares by former Avago shareholders is expected to be tax free.

Avago intends to fund the $17 billion of cash consideration with cash on hand from the combined companies and $9 billion in new, fully-committed debt financing from a consortium of banks.

The transaction has been unanimously approved by the boards of directors of both companies, as well as a special committee of the independent directors of Broadcom. Dr. Samueli and Dr. Nicholas, the founders of Broadcom, have signed support agreements to vote to approve the transaction. Closing of the transaction is expected by the end of the first calendar quarter of 2016, and is subject to regulatory approvals in various jurisdictions, as well as the approval of Avago's and Broadcom's shareholders.

38.     On May 29, 2015, the Company filed a Current Report Form 8-K with the SEC wherein it disclosed the Merger Agreement.  The Merger Agreement contains a number of draconian deal protection devices designed to preclude any competing bids for Broadcom from emerging in the period following the announcement of the Proposed Acquisition, which effectively locks up the deal in favor of the Avago Parties.  As the Individual Defendants were duty bound to maximize stockholder value in connection with the Proposed Acquisition, the inclusion of these provisions, as detailed below, constitutes a further breach of their fiduciary duties.

39.     Under the Merger Agreement, Broadcom is subject to a no-solicitation clause that prohibits the Company from seeking a superior offer for its stockholders. Specifically, §6.3(a) of the Merger Agreement states, in pertinent part:

(a)    Except as expressly permitted by this Section 6.3 , Broadcom will not, and will cause its Subsidiaries and their respective officers, directors and employees not to, and Broadcom will use its reasonable best efforts to cause Broadcom's and its Subsidiaries' respective other Representatives not to, directly or indirectly (i) initiate, solicit, seek or knowingly take any action to facilitate or encourage, any inquiry, proposal or offer that constitutes or would reasonably be expected to lead to a Broadcom Acquisition Proposal, (ii) participate or engage in any negotiations or discussions with any Third Party with respect to any Broadcom Acquisition Proposal, (iii) in connection with any actual or potential Broadcom Acquisition Proposal, disclose or furnish any nonpublic information or data to any Third Party concerning Broadcom's business or properties or afford any Third Party access to its properties, books, or records, (iv) enter into or execute, or propose to enter into or execute, any agreement relating to a Broadcom Acquisition Proposal, or (v) accept, approve, endorse, recommend or make or authorize any public statement, recommendation, or solicitation in support of, or submit to Broadcom's shareholders, any Broadcom Acquisition Proposal.

40.    Furthermore, under §6.3(c) of the Merger Agreement, should it receive an unsolicited bid, the Company must notify the Avago Parties of the bidder's offer. Thereafter, should the Board determine that the unsolicited offer is superior, the Avago Parties are granted four days to amend the terms of the Merger Agreement to make a counter offer that only needs to be as favorable to the Company's stockholders as the unsolicited offer.  The Avago Parties will be able to match the unsolicited offer because they are granted unfettered access to the unsolicited offer, in its entirety, eliminating any leverage the Company has in receiving the unsolicited offer.

41.     Also, pursuant to §8.2 of the Merger Agreement, Broadcom must pay the Avago Parties a $1 billion termination fee if it accepts a superior proposal.

42.     Acceptance of such a superior proposal, however, is impossible. Defendants Samueli and Nicholas entered into support agreements with Avago. Defendants Samueli and Nicholas hold 100% of Broadcom's Class B common shares and over 8.5% of the Company's Class A common shares, which represents 47% of the stockholders' voting power, giving them de facto voting control over Broadcom. The support agreements require defendants Nicholas and Samueli to vote in favor of the Proposed Acquisition and against any alternative acquisition proposals. Thus, absent this litigation, the Proposed Acquisition is a *fait accompli*, as the support agreements make it impossible for stockholders to vote down the transaction. Notably, the support agreements do not have a fiduciary out. Therefore, even if a superior offer arises, Samueli and Nicholas have bound themselves to vote for the Proposed Acquisition. Binding himself to such a transaction without a fiduciary out is a blatant violation of defendant Samueli's fiduciary duty, which defendant Nicholas is aiding and abetting.

**The Proposed Acquisition Undervalues Broadcom**

43.     The Individual Defendants' fiduciary duties require them to maximize stockholder value when entering into a change-in-control transaction such as the Proposed Acquisition. Here, however, the Individual Defendants' eagerness to enter into an acquisition with the Avago Parties due to their conflicted status has resulted in a sales process that was not designed to obtain the maximum price for Broadcom stockholders. As a result, the Company's public stockholders have been, and will continue to be, denied the fair process and arm's-length negotiated terms to which they are entitled to in a sale of their Company. Indeed, the Proposed Consideration does not reflect the true inherent value of the Company as known to the Individual Defendants and the Avago Parties.

44.     The inadequacy of the Proposed Consideration is particularly evident when comparing the premium offered here to that offered in similar transactions.  The Proposed Consideration's premium is less than half the average and median premium of comparable transactions.    The average premiums for transactions in the semiconductor sector over the past three years to a company's 1 day, 1 week, and 1 month average price are 30.55%, 31.15%, and 32.83%, respectively.  The median premiums for transactions are 40.96%, 39.51%, and 38.61%, respectively.  Here, the Proposed Consideration represents a meager 1-day, 1-week, and 1-month premium of 15.8%, 15.5%, and 18.2%, respectively.

45.     Nor does the Proposed Consideration take into account the Company's future business prospects.  As Merrill Lynch pointed out, Broadcom stock trades at a price significantly below it peers.  This is likely due to the market's concerns about the WiFi market and Broadcom's new Tomahawk switch.  As Merrill Lynch explained, these fears are overblown.  Indeed, the Company has beat analyst expectations for sales in three of the last four quarters.  In the Company's most recent quarter, it reported non-GAAP net income for the first quarter of 2015 of $390 million, or $0.64 per share (diluted), compared with non-GAAP net income of $197 million, or $0.33 per share (diluted), for the first quarter of 2014.  Broadcom announced that net revenue for the first quarter of 2015 was $2.06 billion, a 3.7% increase over the same quarter in 2014.  Speaking about these positive results, defendant McGregor stated: "'Broadcom delivered better-than-expected results in the March quarter driven by strength in the high-end smartphone and broadband access markets . . . .  Looking to the June quarter, we see operating performance continuing to strengthen on tight operating expense discipline and strong margins, consistent with our objective of driving profitable growth.'"

46.     Analysts finally began to see the Company's true value after these results were announced.  Before the announcement of the Proposed Acquisition, *10* different analysts had price targets over the Proposed Consideration.  In particular:

1    (a)  B. Riley & Co. had a target price of $60.00.

2    (b)  Nomura had a target price of $60.00.

3    (c)  JP Morgan had a target price of $59.00.

4    (d)  Brean Capital LLC had a target price of $59.00.

5    (e)  RBC Capital Markets had a target price of $56.00.

6    (f)  Drexel Hamilton LLC had a target price of $55.00.

7    (g)  Jefferies had a target price of $55.00.

8    (h)  Oppenheimer & Co. had a target price of $55.00.

9    (i)  Evercore ISI had a target price of $55.00.

10    (j)  FBR Capital Markets had a target price of $55.00

**The Defendants' Interests in the Proposed Acquisition**

47.  The Individual Defendants disloyally placed their own interests first, and tailored the terms and conditions of the Proposed Acquisition to meet their own personal needs and objectives. For example, following the consummation of the Proposed Acquisition, each of the directors and officers will become directors and officers of the new combined company, thus retaining their prestigious and lucrative positions and compensation at the combined company. These executives and directors have managed to secure for themselves substantial employment at the expense of the stockholders' best interests. In particular, defendant Samueli secured for himself a seat on the combined company's board of directors and a position as an executive office. In addition, another Broadcom director will join the board of the combined company. Finally, defendant Nicholas will have a role as an advisor to the company.

48.  The Individual Defendants will also receive the benefit of their largely illiquid stock being cashed out. As the following table shows, the Individual Defendants are receiving billions of dollars for their stock, including hundreds of millions of dollars in accelerated consideration.

| Defendant | Common Share Consideration | | Accelerated Consideration | | Total Merger Consideration | |
|---|---|---|---|---|---|---|
| John E. Major | $ | 1,739,912.50 | $ | 284,435.50 | $ | 2,024,348.00 |
| Eric K. Brandt | $ | 7,244,794.00 | $ | 22,466,153.50 | $ | 29,710,947.50 |
| Eddy W. Hartenstein | $ | 3,864,922.00 | $ | 284,435.50 | $ | 4,149,357.50 |
| Robert E. Switz | $ | 1,843,135.50 | $ | 284,435.50 | $ | 2,127,571.00 |
| Robert J. Finocchio | $ | 1,959,002.50 | $ | 284,435.50 | $ | 2,243,438.00 |
| Nancy H. Handel | $ | 2,813,399.00 | $ | 284,435.50 | $ | 3,097,834.50 |
| Maria Klawe | $ | 1,970,393.00 | $ | 284,435.50 | $ | 2,254,828.50 |
| William T. Morrow | $ | 961,598.00 | $ | 284,435.50 | $ | 1,246,033.50 |
| Scott A. McGregor | $ | 48,188,845.50 | $ | 58,088,225.50 | $ | 106,277,071.00 |
| Henry Samueli | $ | 1,156,643,472.00 | $ | 28,480,937.00 | $ | 1,185,124,409.00 |
| Henry T. Nicholas, III | $ | 1,428,926,834.50 | $ | - | $ | 1,428,926,834.50 |
| **Total** | $ | **2,656,156,308.50** | $ | **111,026,364.50** | $ | **2,767,182,673.00** |

## CLASS ACTION ALLEGATIONS

49.     Plaintiffs bring this action individually and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all holders of Broadcom common stock that have been or will be harmed by the conduct described herein (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any of the defendants.

50.     This action is properly maintainable as a class action.

51.     The Class is so numerous that joinder of all members is impracticable. According to the Merger Agreement, as of May 26, 2015, there were more than 552.9 million shares of Broadcom Class A common stock outstanding and more than 48.9 million shares of Broadcom Class B common stock outstanding.

52.     There are questions of law and fact that are common to the Class and that predominate over questions affecting any individual Class member.  The common questions include the following:

(a)     Whether the Individual Defendants, other than defendant Nicholas, have breached their fiduciary duties of loyalty, good faith, and/or due care with respect to plaintiffs and the other members of the Class in connection with the Proposed Acquisition;

1    (b)    Whether the Individual Defendants, other than defendant Nicholas,

2    breached their fiduciary duty to secure and obtain the best price reasonably available

3    under the circumstances for the benefit of plaintiffs and the other members of the

4    Class in connection with the Proposed Acquisition;

5    (c)    Whether the Proposed Acquisition is entirely fair to the Class;

6    (d)    Whether defendants, in bad faith and for improper motives,

7    impeded or erected barriers designed to discourage other potentially interested parties

8    from making an offer to acquire the Company or its assets;

9    (e)    Whether defendants Nicholas and the Avago Parties aided and

10    abetted any of the other defendants' breaches of fiduciary duties owed to plaintiffs and

11    the other members of the Class in connection with the Proposed Acquisition; and

12    (f)    Whether plaintiffs and the other members of the Class would suffer

13    irreparable injury were the Proposed Acquisition consummated.

14    53.    Plaintiffs' claims are typical of the claims of the other members of the

15    Class and plaintiffs do not have any interests adverse to the Class.

16    54.    Plaintiffs have retained competent counsel experienced in litigation of

17    this nature and will fairly and adequately represent and protect the interests of the

18    Class.

19    55.    The prosecution of separate actions by individual members of the Class

20    would create a risk of inconsistent or varying adjudications with respect to individual

21    members of the Class that would establish incompatible standards of conduct for the

22    party opposing the Class.

23    56.    Defendants have acted, or failed to act, on grounds generally applicable

24    to the Class with respect to the matters complained of herein, thereby making

25    appropriate the relief sought herein with respect to the Class as a whole.

26

27

28

# COUNT I

## Claim for Breach of Fiduciary Duty Pursuant to Cal. Corp. Code §1312(b)
### Against the Individual Defendants (Except Defendant Nicholas)

57.    Plaintiffs repeat and reallege all previous allegations as if set forth fully herein.

58.    As alleged herein, the Individual Defendants (other than defendant Nicholas), as directors and/or officers of the Company, have breached their fiduciary duties to the Company's stockholders by failing to engage in an honest and fair sales process.  The Individual Defendants (other than defendant Nicholas) have violated their fiduciary duties by entering into the Proposed Acquisition without regard to the fairness of the transaction to Broadcom's public shareholders.  In agreeing to the Proposed Acquisition, these Individual Defendants have also initiated a process to sell Broadcom that imposes heightened fiduciary responsibilities on them and requires enhanced scrutiny by the Court.  The Individual Defendants (other than defendant Nicholas) owe fundamental fiduciary obligations to the Company's shareholders to take all necessary and appropriate steps to maximize the value of their shares in implementing such a transaction, including the responsibility to conduct fair and active bidding procedures and to negotiate to obtain the best possible price for the Company's public shareholders.  For the reasons set forth above, the Individual Defendants (other than defendant Nicholas) failed to maximize shareholder value.

59.    The Individual Defendants (other than defendant Nicholas) each have a fiduciary obligation to disclose all material information to plaintiffs and the Class concerning the Proposed Acquisition.  The Individual Defendants (other than defendant Nicholas) failed to adequately discharge their responsibility.

60.    As a result of these Individual Defendants' breaches, plaintiffs and the Class have been and will be harmed in that they will not receive fair and adequate consideration for their Broadcom stock.

61.     Unless the Proposed Acquisition is enjoined by the Court, the Individual Defendants, other than defendant Nicholas, will continue to breach their fiduciary duties owed to plaintiffs and the members of the Class, and may consummate the Proposed Acquisition, all to the irreparable harm of the members of the Class.

## COUNT II

**Claim for Aiding and Abetting Breaches of Fiduciary Duty Pursuant to Cal. Corp. Code §1312(b) Against Defendants Nicholas and the Avago Parties**

62.     Plaintiffs repeat and reallege all previous allegations as if set forth fully herein.

63.     As alleged herein, defendants Nicholas and the Avago Parties were well aware that the Individual Defendants were breaching their fiduciary duties to the Company's public shareholders and substantially assisted the Individual Defendants.

64.     As a result, plaintiffs and Class members have been and will be harmed in that they will not receive fair and adequate consideration for their Broadcom stock.

## COUNT III

**Claim for Breach of Fiduciary Duties Against the Individual Defendants (Except Defendant Nicholas)**

65.     Plaintiffs repeat and reallege all previous allegations as if set forth fully herein.

66.     The Individual Defendants, other than defendant Nicholas, have violated the fiduciary duties of care, loyalty and good faith owed to the public stockholders of Broadcom and have acted to put their personal interests ahead of the interests of Broadcom stockholders.

67.     By the acts, transactions, and course of conduct alleged herein, defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive plaintiffs and the other members of the Class of the true value of Broadcom.

68.     The Individual Defendants, other than defendant Nicholas, have violated their fiduciary duties by entering Broadcom into the Proposed Acquisition without regard to the effect of the Proposed Acquisition on Broadcom's stockholders.

69.     As demonstrated by the allegations above, the Individual Defendants, other than defendant Nicholas, failed to exercise the care required and breached their duty of loyalty owed to the stockholders of Broadcom because, among other reasons:

(a)     They failed to take steps to maximize the value of Broadcom to its public stockholders;

(b)     They failed to properly value Broadcom and its various assets and operations; and

(c)     They ignored or did not protect against the numerous conflicts of interests resulting from the Individual Defendants' own financial stakes in the Proposed Acquisition.

70.     Because the Individual Defendants control the business and corporate affairs of Broadcom, and have access to private corporate information concerning Broadcom's assets, business, and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public stockholders of Broadcom that makes it inherently unfair for them to pursue and recommend the Proposed Acquisition wherein they will reap disproportionate benefits to the exclusion of maximizing stockholder value.

71.     By reason of the foregoing acts, practices, and course of conduct, the Individual Defendants, other than defendant Nicholas, have failed to exercise ordinary care and diligence in the exercise of their fiduciary duties toward plaintiffs and the other members of the Class.

72.     The Individual Defendants are engaging in self-dealing, are not acting in good faith toward plaintiffs and the other members of the Class, and have breached and are breaching their fiduciary duties owed to the Class.

73.     As a result of the Individual Defendants' unlawful actions, plaintiffs and the other members of the Class will be irreparably harmed in that they will not receive fair or adequate consideration for the value of Broadcom's assets and operations. Unless the Proposed Acquisition is enjoined by the Court, the Individual Defendants, other than defendant Nicholas, will continue to breach their fiduciary duties owed to plaintiffs and the members of the Class, and may consummate the Proposed Acquisition, all to the irreparable harm of the members of the Class.

74.     Plaintiffs and the members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can plaintiffs and the members of the Class be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT IV

**Claim for Aiding and Abetting Breaches of Fiduciary Duties**
**Against Defendants Nicholas and the Avago Parties**

75.     Plaintiffs repeat and reallege all previous allegations as if set forth fully herein.

76.     Defendants Nicholas and the Avago Parties knowingly assisted the Individual Defendants' breaches of fiduciary duties in connection with the Proposed Acquisition, which, without such aid, would not have occurred.  In connection with discussions regarding the Proposed Acquisition, Nicholas and the Avago Parties obtained, sensitive, non-public information concerning Broadcom and thus had unfair advantages that are enabling the Avago Parties to acquire the Company at an unfair and inadequate price.

77.     As a result of this conduct, plaintiffs and the other members of the Class have been and will be harmed in that they have been and will be prevented from obtaining a fair price for their Broadcom shares.

78.     As a result, plaintiffs and the Class members are being irreparably harmed.

79.    Plaintiffs and the Class have no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs demand injunctive relief, in plaintiffs' favor and in favor of the Class and against defendants as follows:

A.    Declaring that this action is properly maintainable as a class action;

B.    Rescinding, to the extent already implemented, the Merger Agreement;

C.    Enjoining defendants, their agents, counsel, employees, and all persons acting in concert with them from consummating the Proposed Acquisition, unless and until the Company adopts and implements a procedure or process reasonably designed to enter into a merger agreement providing the best possible value for stockholders;

D.    Awarding plaintiffs the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

E.    Granting such other and further equitable relief as this Court may deem just and proper.

DATED:  June 18, 2015

ROBBINS GELLER RUDMAN
 & DOWD LLP
DAVID T. WISSBROECKER

*s/ David T. Wissbroecker*

DAVID T. WISSBROECKER

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS ARROYO LLP
BRIAN J. ROBBINS
STEPHEN J. ODDO
EDWARD B. GERARD
JUSTIN D. RIEGER
600 B Street, Suite 1900
San Diego, CA  92101
Telephone:  619/525-3990
619/525-3991 (fax)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ANDREWS & SPRINGER LLC
PETER B. ANDREWS
CRAIG J. SPRINGER
3801 Kennett Pike Building C, Suite 305
Wilmington, DE  19807
Telephone:  302/504-4957
302/397-2681 (fax)

DUNNAM DUNNAM HARMON WEST
  LINDLEY & RYAN LLP
HAMILTON P. LINDLEY
4125 W. Waco Drive
Waco, TX  76710
Telephone:  254/753-6437
254/753-7434 (fax)

Attorneys for Plaintiffs