In Re Broadcom, 15-cv-009790-JVS-PJWx

## ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING MOTION FOR AN AWARD OF ATTORNEYS' FEES, AND COSTS

Lead Plaintiffs Iron Workers Mid-America Pension Plan and Oklahoma Firefighters Pension and Retirement System on behalf of themselves and other similarly situated (collectively "Plaintiffs") moved for final approval of a proposed class action settlement with Defendants Avago Technologies Ltd. ("Avago"), Pavonia Ltd., Safari Cayman L.P., Avago Technologies Cayman Holdings Ltd., Avago Technologies Cayman Finance Ltd., Buffalo CS Merger Sub, Inc., Buffalo UT Merger Sub, Inc, Henry Nicholas, Scott McGregor, Henry Samueli, Robert Switz, John Major, Eddy Hartenstein, Maria Klawe, Nancy Handel, William Morrow, Robert Finocchio, and Eric Brandt (collectively "Defendants"). Docket No. 111. Defendants filed a notice of non-opposition. Docket No. 116. Plaintiffs replied. Docket No. 117.

Plaintiffs also moved for an award of attorneys' fees and expenses. Docket No. 113. Defendants have not opposed.

For the following reasons, the Court **grants** the motion for final approval and **grants** the motion for attorneys' fees.

## BACKGROUND

### I.     Procedural History

On May 28, 2015, Broadcom Corporation ("Broadcom") announced a proposed merger with Avago Technologies Limited ("Avago"). See Yassian v. McGregor, No. 15-1303, Yassian Compl. ¶ 3, Docket No. 1. Under the merger agreement, Broadcom shareholders could receive (subject to proration): (1) $54.50 in cash; (2) 0.4378 ordinary shares in the newly-formed holding company, Holdco; (3) a restricted equity security that is the economic equivalent of 0.4378 ordinary shares of Holdco that will not be non-transferable or saleable for one to two years after closing; or (4) some combination thereof. Id.

On June 18, 2015, Robert Wytas and Dean Crombie filed a complaint in this

1

Court on behalf of all Broadcom public stockholders against certain current and former officers and directors of Broadcom for breach of fiduciary duties related to the proposed merger. See Compl. ¶ 3, Docket No. 1. Several plaintiffs also filed similar lawsuits in state court. Ex. A, Docket No. 35. On September 25, 2015, the Orange County Superior Court stayed the state actions while the federal actions were pending. Id.

On August 14, 2015, Farshid Yassian, as custodian for his sons Remy Yassian and Ryan Yassian, filed a separate complaint on behalf of all Broadcom public stockholders against Broadcom for disseminating false and misleading registration statements in violation of the Securities Exchange Act, 15 U.S.C. § 78a et seq. See Stip. to Consolidate Actions at 3, Docket No. 27.

On September 18, 2015, this Court consolidated both actions and appointed Yassian as Interim Lead Plaintiff and Weisslaw LLP, Yassian's counsel, as Interim Lead Counsel. See Order Granting Stip. to Consolidate Cases at 4–5, Docket No. 31. On November 16, 2015, the Court appointed Iron Workers' and Oklahoma Firefighters' as Lead Plaintiffs. Docket No. 69. It also appointed Cohen Milstein Sellers & Toll PLLC and Westerman Law Corp. as Lead and Liason counsel, respectively. Id.

On September 28, 2015, Broadcom filed a Definitive Proxy Statement/ Prospectus on Schedule 14A. Prospectus, Docket No. 76-3. It provided disclosures and sought shareholder approval for the merger. Id. On October 27, 2015, the parties agreed that certain supplemental disclosures would cure any alleged disclosure defects. Id. Hence, on October 28, 2015, Broadcom filed supplemental disclosures with the SEC. Supplemental Disclosures, Ex. C, Docket No. 95-7. These disclosures provided additional background on the merger, a summary of the financial analysis and opinion of Broadcom's financial advisor, a summary of the financial analysis and opinion of Broadcom's Special Committee's financial advisor, certain financial forecasts used by Broadcom in connection with the merger, and questions and answers about the transaction. Id. On November 10, 2015, Broadcom and Avago shareholders overwhelmingly approved the proposed transaction. Shareholders of Avago Technologies Overwhelmingly Approve Merger with Broadcom, Broadcom Investor Center (November 17, 2015 5:02 PM), http://investors.broadcom.com/phoenix.zhtml?c=203541&p=irol-newsArticle&ID=2111278.

On January 15, 2016, Plaintiffs filed a second amended complaint ("SAC"). Docket No. 74. On February 16, 2016, Defendants moved to dismiss. Docket No. 76. While the motion was pending, the parties negotiated. On June 23, 2016, the parties submitted a joint stipulation that informed the Court that they had reached a provisional settlement; they requested that the Court adjourn the motion to dismiss briefing, subject to the submission of formal settlement documents. Docket No. 93. On September 23, 2016, they filed a Stipulation and Agreement of Compromise and Settlement ("Settlement"). Docket No. 95.

On November 23, 2016, the Court preliminarily approved the settlement. Docket No. 103.

## II. Settlement Agreement

### A. Plaintiffs' Proposed Class

Plaintiffs have requested that the Court certify the following class:

> All record and beneficial owners of Broadcom Corporation Class A common stock who owned or held Broadcom Class A common stock from May 27, 2015 through and including February 1, 2016 (the 'Class Period'), including any and all of their respective successors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns, or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them (the 'Settlement Class,' to be composed of 'Class Members'). Excluded from the Settlement Class are Defendants, members of the immediate family of any Defendant, any entity in which a Defendant has or had a controlling interest, and the legal representatives, heirs, successors, or assigns of any such excluded person.

Mot. at 13, n.4. Docket No. 96.

## B. Settlement Terms

The proposed Settlement consists of Broadcom's supplemental disclosures and also its representations in the Settlement Agreement. Broadcom made the following representations, which it will file with the SEC:

> (a) There currently is no agreement in place binding Broadcom Limited or any subsidiary of Broadcom Limited to pay any fees, expenses or other consideration to the holders of limited partnership units ("LP Units") of Broadcom Cayman L.P. in connection with any Holdings Offer (as defined in the Amended and Restated Exempted Limited Partnership Agreement of Broadcom Cayman L.P., dated as of February 1, 2016 (the "LPA")) beyond the consideration offered to the holders of ordinary shares of Broadcom Limited in connection with any such transaction, except to the extent, if any, set forth in the LPA. Broadcom Limited, Henry Nicholas and Henry Samueli each agree that in connection with any Holdings Offer, they will not enter into any agreement for the payment by Broadcom or any of its subsidiaries, of any of Dr. Nicholas's or Dr. Samueli's fees or expenses incurred by either of them in their capacity as holders of LP Units (it being understood that, for the avoidance of doubt, the foregoing restriction shall not apply to any obligations in the Support Agreements, dated May 28, 2015, indemnification and advancement of expense obligations due to directors or officers generally, or otherwise in their capacity as a director or officer of Broadcom Limited or any of its subsidiaries).
>
> (b) The holders of LP Units do not have any separate voting or veto rights in connection with any Holdings Offer, except to the extent, if any, set forth in the LPA and the Voting Trust Agreement, dated as of February 1, 2016, among Broadcom Limited, Broadcom Cayman L.P. and the Computershare Trust Company, N.A. (as trustee thereunder), nor is any change to such provisions

>of the LPA and the Voting Trust Agreement relating to separate voting or veto rights being discussed between Broadcom Cayman L.P. and Broadcom Limited on one hand, and anyone else on the other hand, as of the date of this Stipulation.

Settlement Agreement at 17–18, Docket No. 95. These disclosures and representations are the full and final consideration for the Settlement. Broadcom is responsible for reasonable attorneys' fees and expenses awarded by the Court. Id. at 21. Defendants reserve the right to oppose Plaintiffs' fee applications. Id. Finally, Broadcom is responsible for providing reasonable notice of the Settlement and paying any associated costs.

## LEGAL STANDARD

Rule 23(e) requires court approval for class-action settlements. Fed. R. Civ. P. 23(e). When a class action settles before class certification, a court uses a two-step process to approve a class-action settlement. Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). First, a court must certify the proposed settlement class. Id. Second, a court must determine whether the proposed settlement is fundamentally fair, adequate, and reasonable. Id.

A court considers several factors to determine whether a proposed settlement is fair, adequate, and reasonable. These include:

>(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011) (quoting Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004)).

## ANALYSIS

## I. Class Certification

The Court preliminarily certified the proposed class in its prior order. Docket No. 102 at 5–9. Nothing has changed in the interim that would warrant a deviation from the Court's prior ruling. Therefore, for the reasons specified in its preliminary approval order, the Court certifies the Settlement Class for final approval of the Settlement Agreement.

## II. Approval of Class Settlement

The Court analyzes the applicable factors and finds that the proposed Settlement Agreement is fair, adequate, and reasonable.

### A. Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

Plaintiffs faced numerous bars to success in their case. Most importantly, at the time the case settled, Plaintiffs faced a pending motion to dismiss. Stock market declines meant that all Broadcom stockholders that elected to receive ordinary shares received the entirety of their requested amount without proration. Therefore, Plaintiffs might have been unable to show that Class B shareholders received better treatment than public stockholders. Decl. of Joshua Devore ("Devore Decl.") ¶ 43. Furthermore, market declines also meant that Plaintiffs might have been unable to show loss causation. Id. ¶ 44. Therefore, Plaintiffs' securities claims might have failed.

Likewise, Defendants argued, under California Corporations Code § 1300, that Plaintiffs could not recovery monetary damages breaches of fiduciary duty in the course of a merger. Id. ¶ 45. Defendants also argued that the transaction was subject to the business judgment rule, under which proof of fraud would have been difficult for Plaintiffs. Id. ¶ 46.

And even if Plaintiffs had survived the motion to dismiss, they would have had to undergo extensive fact discovery, expert discovery, summary judgment, and trial preparation. Id. ¶¶ 48–49. It would have required extensive and expensive discovery into a complex corporate transaction. Plaintiffs would probably have had to depose many of the individual defendants, as well as numerous Avago and Broadcom employees. Plaintiffs would also have needed to designate experts and

conduct expert discovery. Finally, Plaintiffs would have needed to win a trial on the merits and overcome potential appeals.

### B. Extent of Discovery Completed and the Stage of the Proceedings

The parties have not yet taken extensive discovery; nor has the case passed the motion to dismiss stage. But the wealth of available information on publicly-traded companies means that Plaintiffs' counsel has had the option to investigate the underlying factual allegations and evaluate the claims' potential. This allowed Plaintiffs and their counsel to make an informed decision to settle rather than continue litigation.

### C. Experience and Views of Counsel

Both parties have experienced counsel who can competently evaluate the settlement. Lead Counsel has experience in numerous other securities class actions, suggesting that it has provided aggressive representation. See Cohen Milstein Firm Resume, Investors Mot. for App't of Lead Pl., Ex. D at 24–27, 40–41, 81–82, Docket No. 38-4. Defendants are represented by Latham and Watkins LLP and Wilson Sonsini Goodrich and Rosati LLP; these are both well-regarded firms with extensive expertise in securities litigation.

### D. Reaction of the Class Members to the Proposed Settlement

As specified in the Court's preliminary approval order, the Claims Administrator has notified potential Class Members by mailing a postcard notice to individual members. Devore Decl. ¶ 51. In addition, the Claims Administrator published a notice in Investor's Business Daily. Id. ¶ 53. Yet, despite widespread notice, no class members have objected to the Settlement Agreement or notified Lead Counsel that they intend to appear at the Settlement hearing. Devore Decl. ¶ 97, Ex. 2. The lack of objections supports the settlements. Chun-Hoon v. McKee Foods Corp., 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("The reaction of class members to the proposed settlement, or perhaps more accurately the absence of a negative reaction, strongly supports settlement.").

In sum, the Court finds that the proposed settlement is fair reasonable and adequate.

## III. Attorneys' Fees and Costs

The Court may award reasonable attorneys' fees and costs in certified class actions where they are authorized by law or by the parties' agreement. Fed. R. Civ. P. 23(h). Even when parties have agreed to a fee award, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable[.]" In re Bluetooth, 654 F.3d at 941.

### A. Entitlement to Fees

Both California and federal law permit plaintiffs to recover attorneys' fees in a stockholder class action if shareholders received substantial benefits from the litigation. See Mills v. Elec. Auto-Lite Co., 396 U.S. 375, 396–97 (1970) (attorney fees available under § 14(a) even when there is no monetary recovery); Fletcher v. A. J. Indus., Inc., 266 Cal. App. 2d 313, 320 (1968) (awarding attorneys' fees in a derivative suit even with no monetary recovery). This applies even if "the benefits were not 'pecuniary' and the action had not produced a fund from which they might be paid." Fletcher, 266 Cal. App. 2d at 320; see also Mills, 396 U.S. at 396 (no requirement that suit must recover money).

Substantial benefit has been conferred "if the court finds, upon proper evidence, that the results of the action maintain the health of the corporation and raise the standards of fiduciary relationships and of other economic behavior, or prevent(s) an abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment or protection of an essential right to the stockholder's interest." Fletcher, 266 Cal. App. 2d at 324–25 (internal quotations omitted).

Plaintiffs argue that attorneys' fees are appropriate because the litigation substantially benefitted Broadcom's shareholders. Docket No. 114 at 12. In particular, Plaintiffs argue that the settlement forced Broadcom to make additional disclosures regarding the transaction. Id. These disclosures provided additional background on the merger, a summary of the financial analysis and opinion of Broadcom's financial advisor, a summary of the financial analysis and opinion of Broadcom's Special Committee's financial advisor, certain financial forecasts used by Broadcom in connection with the merger, and questions and answers about the transaction. Supplemental Disclosures, Ex. C, Docket No. 95-7. Plaintiffs further argue that these disclosures meaningfully and substantially improved stockholders'

8

ability to vote on the proposed transaction, because it provided shareholders with further information and detail on Defendants' compliance with their fiduciary duties. Docket No. 114 at 13. Finally, the Settlement Agreement also required Defendants to file additional representations to the SEC; these substantially benefited the shareholders because it allowed them to vote with the assurance that the individual defendants have no separate voting or veto rights connected to the transaction. Settlement Agreement at 17–18.

The Court agrees that the action substantially benefitted the corporation. Although the new disclosures or representations did not radically restructure the company, they provided shareholders with material information. See Brown v. Brewer, No. CV06-3731-GHK SHX, 2010 WL 2472182, at *21 (C.D. Cal. June 17, 2010) ("A reasonable shareholder would have wanted to independently evaluate management's internal financial projections to see if the company was being fairly valued."). Therefore, Plaintiff may recover reasonable attorneys' fees.

### B. Amount of Fees

A district court may apply the lodestar method to determine appropriate attorneys' fees. Staton, 327 F.3d at 967. This requires multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate for the relevant market and the lawyers's experience levels. In re Bluetooth, 654 F.3d at 941.

Plaintiffs request $1,125,000 in attorneys' fees and expenses. Docket No. 113 at 1. Plaintiffs argue that Plaintiffs' Counsel expended 3,015.65 hours and incurred $1,989,764.25 in fees. Devore Decl. ¶¶ 74, 75. Therefore, Plaintiffs' requested award is only 56 percent of the lodestar.

The Court finds that the number of hours incurred by Plaintiffs' Counsel is high, but reasonable. The case lasted over a year and required counsel to investigate the Avago-Broadcom transaction, file cases in both state and federal court, research relevant legal issues, negotiate the Supplemental Disclosures, and prepare an opposition to Defendants' motion to dismiss. Although the case did not progress past the motion to dismiss stage, counsel conducted document discovery and two depositions. Devore Decl. ¶¶ 22–26. Furthermore, the parties conducted several rounds of motion practice and negotiations related to the case's discovery stays. Id.

The Court also finds Lead Counsel's rates to be high but reasonable. Cohen Milstein's proposed rates range from $685–$945 for partners and of counsel, $530 for associates, and $280 for paralegals. The attached declarations and exhibits show that the firm's attorneys are experienced and successful litigators. Devore Decl. Ex. 4–6. And other courts have recently approved the firm's proposed rates. See Severstal Wheeling, Inc. v. WPN Corp., 2016 U.S. Dist. LEXIS 53563, at *14 (S.D.N.Y. Apr. 21, 2016) ("Cohen Milstein is not a premier large New York firm, but its proposed rates fall below those charged by the highest-tier firms and the Court finds them to be within the range of reasonable rates charged by firms of comparable caliber for complex commercial matters."). Other courts in this district have also approved similar rates. See, e.g., In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig., 295 F.R.D. 438, 462 (C.D. Cal. 2014) (approving rates of $600 for a partner and $275–$325 for associates); In re Amgen Sec. Litig., No. CV 7-2536 PSG (PLAx), 2016 U.S. Dist. LEXIS 148577, at *27 (C.D. Cal. Oct. 25, 2016) (reasonable lodestar comprised "billing rate ranging from $750 to $985 per hour for partners, $500 to $800 per hour for 'of counsels'/senior counsel, and $300 to $725 per hour for other attorneys."); Kearney v. Hyundai Motor Am., No. SACV 09-1298-JST, 2013 WL 3287996, at *8 (C.D. Cal. June 28, 2013) (approving hourly rates between $650 and $800 for class counsel in a consumer class action). Therefore, the Court finds that these rates are also reasonable for the market.

Furthermore, numerous courts have suggested that an award is probably reasonable if it is below the lodestar. See, e.g., In re Initial Pub. Offering Sec. Litig., 671 F. Supp. 2d 467, 515 (S.D.N.Y. 2009) In re Amgen, 2016 U.S. Dist. LEXIS 148577 at *27; Aichele v. City of L.A., No. CV 12-10863-DMG (FFMx), 2015 U.S. Dist. LEXIS 120225, at * 21 (C.D. Cal. Sep. 9, 2015). Here, Plaintiffs request an award that is almost half of the lodestar. This suggests that the fee award is reasonable.

Finally, several factors support the fee award here. First, Plaintiffs' Counsel faced significant risk from contingent fee litigation because they expended significant time and money without guaranteed payment. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 (9th Cir. 2002). Second, the parties here negotiated the fee. See Feuer v. Thompson, No. 10-CV-00279 YGR, 2013 U.S. Dist. LEXIS 84325, at *15–16 (N.D. Cal. June 14, 2013) (negotiated fee agreement is subject to less judicial scrutiny than a disputed fee request).

In sum, the Court finds that the proposed fee is reasonable.

## CONCLUSION

For the foregoing reasons, the Court **grants** both motions.